EX. A    EX. A

Menu    Set Weather    Subscribe    Search

NATIONAL POLITICS

# Ohio Parole Board is secretive and 'frighteningly unfair,' former member Shirley Smith says

Updated Jan 23, 2:34 PM;
Posted Jan 23, 2:17 PM



Former Ohio Parole Board member Shirley Smith, who stepped down last month, says she saw board members acting in secretive, biased, and unprofessional ways.

47    639 shares    1

By Jeremy Pelzer, cleveland.com

COLUMBUS, Ohio—A former state senator who recently left the Ohio Parole Board is now speaking out against it, painting it as a "secret society" whose members make decisions on inmates' futures using inconsistent, biased or racist reasoning, often after missing hearings or being distracted by food or other work.

Cleveland Democrat Shirley Smith, in an op-ed submitted to Ohio media outlets and in a follow-up interview with cleveland.com, called for an independent investigation of the nine-member board, claiming she "witnessed strongly biased opinions regarding cases, unprofessional behavior, unethical decisions, and a frighteningly unfair practice of tribal morality."

Parole Board spokeswoman JoEllen Smith said in a statement that the state's prisons agency "has a very open policy review process that encourages and solicits input and suggestions from all employees of the agency." She added that Annette Chambers-Smith, Gov. Mike DeWine's nominee to head the state's prisons agency, "intends to conduct a comprehensive review of board policies and procedures."

Here's more on the concerns laid out by Smith, who was appointed by Republican Gov. John Kasich to the board in 2015.

**Claim:** Parole Board members are regularly distracted during parolees' hearings

1

Shirley Smith said board members conduct five to 10 hearings in a day via videoconference, giving themselves no time for lunch and little time to prepare for an individual's case. A parolee, who often has been waiting years for a hearing, sees a board that is often eating during a hearing not paying attention because they are reviewing documents from an upcoming case, said Smith, admitting she, too, was guilty of the practice while on the board.

"You have to face parole board members that seemingly are rude, because they're eating, they're not paying attention, they don't look up, and sometimes they don't ask questions," Smith said. Smith said, though, that this usually didn't occur during death-penalty clemency hearings, as (unlike parole hearings) they are open to the public.

**Response:** JoEllen Smith, a spokeswoman for the Ohio Department of Rehabilitation and Correction, didn't address this specific claim in her response.

**Claim:** Parole Board members often miss hearings but still vote

Shirley Smith said when an inmate comes before the Parole Board, often only a fraction of board members are there to hear their argument for parole – sometimes because they're attending self-defense training classes required for all parole board members. However, absent board members are still allowed to vote on whether to grant parole to inmates whose hearings they did not attend – "ghost votes," as Smith dubbed them. "You can't make an assessment of a person if you're not there," Smith said. "So how are you basing your decision on whether he's eligible or whether he's not?"

1

**Response:** JoEllen Smith didn't address this specific claim in her response.

**Claim:** Parole Board members are harsher against minorities

Shirley Smith said the board frequently "emasculated" black men who came before them and were "harsher and stricter with people of color." During questioning, Smith said, "I think they treat them like they're dogs sometimes." She also said that a couple months ago, a Spanish-speaking inmate with little understanding of English came before the board. Smith said she proposed rescheduling his hearing so an interpreter could be brought in, but that board member Mark Houk argued against it. "Well, why should we do that?" she quoted Houk as saying. That's costing the state money. I can just give him five years based on what he's in for."

**Response:** JoEllen Smith didn't address this specific claim, and she declined to make Houk available for comment (Houk could not independently be reached for comment. Parole Board members' contact information could not be found online).

**Claim:** Board members and staff lack racial or professional diversity

Shirley Smith said it's a problem that most of the Parole Board and almost all their staff members are white. "If you're dealing with people who are not a person of color, then that makes that person who comes up for parole very reluctant to talk about their issues, to trust anybody," Smith said. Smith also said that the Parole Board shouldn't be composed of mostly former parole officers, but should include others such as mental-health professionals and current or former lawmakers who can communicate with the legislature about the need for law changes.

1

**Response:** JoEllen Smith said in a statement that Annette Chambers-Smith, Gov. Mike DeWine's nominee to head the state's prisons agency, "will be looking to add members who will create an inclusive and diverse Board."

**Claim:** Board members are often unfairly swayed by prosecutors and victims

Shirley Smith said the Parole Board will sometimes recommend someone for parole, but then change their mind once they hear from victims or prosecutors – particularly Franklin County Prosecutor Ron O'Brien. "He'll come in, and he's very disparaging to the family, and he talks about the offender so badly that it brings them [board members] pause whether that person should be released," she said. Smith suggested that prosecutors should be barred altogether from parole hearings.

**Response:** O'Brien stated in an email that barring prosecutors from parole hearings would violate the "Marsy's Law" provision of the Ohio Constitution and a related statute known as Roberta's Law. He added that Ohio law suggests that prosecutors get involved in parole hearings, as state law requires county prosecutors to be notified when inmates from their county are eligible for parole. "I do not appear very often at a Parole board hearing unless the case justifies it," O'Brien stated, "and if I do I hope that I make an effective presentation as Ms. Smith apparently seems to suggest."

**Claim:** Board members have "a tribal relationship"

Shirley Smith said most of the board members are current or former parole officers, so they are biased against prospective parolees who were convicted of violence against a police officer or a corrections officer. She also said the board is dominated by DRC Court and Community director Cynthia Mausser, who she claimed is close friends with Parole Board Chair Trayce Thalheimer. "You had no way of going outside of at least the two of them – the chair and the boss above the chair – and getting anything done," Smith said.

**Response:** JoEllen Smith didn't address this claim, and she declined to make Mausser available for comment.

Smith said she retired from the board in December out of "frustration" with how the Parole Board was operating. In February 2018, she said raised her voice during a Parole Board meeting because of the way some board members were treating an inmate during a hearing. Smith said three board members subsequently filed complaints about her "outburst," but no action ended up being taken against her.

"That's one of the ways that they shut people down, is they threaten them with these investigations, then they'll find them not guilty," Smith said.

1