AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

LANCE POUGH

*Plaintiff*

v.  Civil Action No. 2:21-cv-880

MIKE DEWINE, et al

*Defendant*

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Jeremy Pelzer 302 E.Moler St., Columbus, Ohio 43207

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: Any documents relating to or referring to Shirley Smith, ex parole board member including but not limited to interview notes, interview transcripts, emails, phone texts, electronically stored documents relating to Shirley Smith's Jan.2019 public claims against

| Place: Lance Pough, A653422, PO BOX 788, Mansfield, Ohio 44901 | Date and Time: 8-25-2023 2pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____     _____
*Signature of Clerk or Deputy Clerk*      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Lance Pough, A653422, PO BOX 788, Mansfield, 44901 , who issues or requests this subpoena, are:

Lance Pough, 653422, PO Box 788, Mansfield, Ohio 44901

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Case: 2:21-cv-00880-MHW-CHG Doc #: 131-1 Filed: 06/28/23 Page: 3 of 15 PAGEID #: 1376

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
 **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
 **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
 **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

(Continued)

the Ohio parole Board, it's members, former members and the way the parole board operates.

2) Any documents or responses through texts, text messages, emails or written correspondence(s) you recieved from the ODRC and it's spokeswoman JoEllen Smith addressing Shirley Smith's Jan. 2019 media blast claims against the Ohio Parole Board and it's members and ex members as detailed in Ex.A, Ex.A1 and Ex.B attached to the complaint and the instant subpoena.

3) Any document that was used to create Ex.A and Ex.A1(attached), as well as used to support it.

THE COURT TO ISSUE THE SUBPOENA DUCES TECUM-US District Court, 200 W, Second St., RM 712, Dayton, Ohio 45402

Magistrate Judge Caroline H. Gentry

The title of the action is-Pough v DeWine, et al Case No. 2:21-cv-880

The subpoena has attached a document quoting the entirety of rule 45(c) and (d) which details the rights and duties of those subject to respond to a subpoena

EX.A EX.A

## NATIONAL POLITICS

# Ohio Parole Board is secretive and 'frighteningly unfair,' former member Shirley Smith says

Updated Jan 23, 2:34 PM;
Posted Jan 23, 2:17 PM



Former Ohio Parole Board member Shirley Smith, who stepped down last month, says she saw board members acting in secretive, biased, and unprofessional ways.

47     639 shares     1

By Jeremy Pelzer, cleveland.com

COLUMBUS, Ohio—A former state senator who recently left the Ohio Parole Board is now speaking out against it, painting it as a "secret society" whose members make decisions on inmates' futures using inconsistent, biased or racist reasoning, often after missing hearings or being distracted by food or other work.

Cleveland Democrat Shirley Smith, in an op-ed submitted to Ohio media outlets and in a follow-up interview with cleveland.com, called for an independent investigation of the nine-member board, claiming she "witnessed strongly biased opinions regarding cases, unprofessional behavior, unethical decisions, and a frighteningly unfair practice of tribal morality."

Parole Board spokeswoman JoEllen Smith said in a statement that the state's prisons agency "has a very open policy review process that encourages and solicits input and suggestions from all employees of the agency." She added that Annette Chambers-Smith, Gov. Mike DeWine's nominee to head the state's prisons agency, "intends to conduct a comprehensive review of board policies and procedures."

Here's more on the concerns laid out by Smith, who was appointed by Republican Gov. John Kasich to the board in 2015.

**Claim:** Parole Board members are regularly distracted during parolees' hearings

1

Shirley Smith said board members conduct five to 10 hearings in a day via videoconference, giving themselves no time for lunch and little time to prepare for an individual's case. A parolee, who often has been waiting years for a hearing, sees a board that is often eating during a hearing not paying attention because they are reviewing documents from an upcoming case, said Smith, admitting she, too, was guilty of the practice while on the board.

"You have to face parole board members that seemingly are rude, because they're eating, they're not paying attention, they don't look up, and sometimes they don't ask questions," Smith said. Smith said, though, that this usually didn't occur during death-penalty clemency hearings, as (unlike parole hearings) they are open to the public.

**Response:** JoEllen Smith, a spokeswoman for the Ohio Department of Rehabilitation and Correction, didn't address this specific claim in her response.

**Claim:** Parole Board members often miss hearings but still vote

Shirley Smith said when an inmate comes before the Parole Board, often only a fraction of board members are there to hear their argument for parole – sometimes because they're attending self-defense training classes required for all parole board members. However, absent board members are still allowed to vote on whether to grant parole to inmates whose hearings they did not attend – "ghost votes," as Smith dubbed them. "You can't make an assessment of a person if you're not there," Smith said. "So how are you basing your decision on whether he's eligible or whether he's not?"

1

**Response:** JoEllen Smith didn't address this specific claim in her response.

**Claim:** Parole Board members are harsher against minorities

Shirley Smith said the board frequently "emasculated" black men who came before them and were "harsher and stricter with people of color." During questioning, Smith said, "I think they treat them like they're dogs sometimes." She also said that a couple months ago, a Spanish-speaking inmate with little understanding of English came before the board. Smith said she proposed rescheduling his hearing so an interpreter could be brought in, but that board member Mark Houk argued against it. "Well, why should we do that?" she quoted Houk as saying. That's costing the state money. I can just give him five years based on what he's in for."

**Response:** JoEllen Smith didn't address this specific claim, and she declined to make Houk available for comment (Houk could not independently be reached for comment. Parole Board members' contact information could not be found online).

**Claim:** Board members and staff lack racial or professional diversity

Shirley Smith said it's a problem that most of the Parole Board and almost all their staff members are white. "If you're dealing with people who are not a person of color, then that makes that person who comes up for parole very reluctant to talk about their issues, to trust anybody," Smith said. Smith also said that the Parole Board shouldn't be composed of mostly former parole officers, but should include others such as mental-health professionals and current or former lawmakers who can communicate with the legislature about the need for law changes.

**Response:** JoEllen Smith said in a statement that Annette Chambers-Smith, Gov. Mike DeWine's nominee to head the state's prisons agency, "will be looking to add members who will create an inclusive and diverse Board."

**Claim:** Board members are often unfairly swayed by prosecutors and victims

Shirley Smith said the Parole Board will sometimes recommend someone for parole, but then change their mind once they hear from victims or prosecutors – particularly Franklin County Prosecutor Ron O'Brien. "He'll come in, and he's very disparaging to the family, and he talks about the offender so badly that it brings them [board members] pause whether that person should be released," she said. Smith suggested that prosecutors should be barred altogether from parole hearings.

**Response:** O'Brien stated in an email that barring prosecutors from parole hearings would violate the "Marsy's Law" provision of the Ohio Constitution and a related statute known as Roberta's Law. He added that Ohio law suggests that prosecutors get involved in parole hearings, as state law requires county prosecutors to be notified when inmates from their county are eligible for parole. "I do not appear very often at a Parole board hearing unless the case justifies it," O'Brien stated, "and if I do I hope that I make an effective presentation as Ms. Smith apparently seems to suggest."

[1]

**Claim:** Board members have "a tribal relationship"

Shirley Smith said most of the board members are current or former parole officers, so they are biased against prospective parolees who were convicted of violence against a police officer or a corrections officer. She also said the board is dominated by DRC Court and Community director Cynthia Mausser, who she claimed is close friends with Parole Board Chair Trayce Thalheimer. "You had no way of going outside of at least the two of them – the chair and the boss above the chair – and getting anything done," Smith said.

**Response:** JoEllen Smith didn't address this claim, and she declined to make Mausser available for comment.

Smith said she retired from the board in December out of "frustration" with how the Parole Board was operating. In February 2018, she said raised her voice during a Parole Board meeting because of the way some board members were treating an inmate during a hearing. Smith said three board members subsequently filed complaints about her "outburst," but no action ended up being taken against her.

"That's one of the ways that they shut people down, is they threaten them with these investigations, then they'll find them not guilty," Smith said.

1

EX. A1  EX. A1

# Cleveland.com

## Ohio Parole Board is secretive and 'frighteningly unfair,' former member Shirley Smith says

Updated Jan 23; Posted Jan 23 By

COLUMBUS, Ohio—A former state senator who recently left the Ohio Parole Board is now speaking out against it, painting it as a "secret society" whose members make decisions on inmates' futures using inconsistent, biased or racist reasoning, often after missing hearings or being distracted by food or other work.

Cleveland Democrat Shirley Smith, in an op-ed submitted to Ohio media outlets and in a follow-up interview with cleveland.com, called for an independent investigation of the nine-member board, claiming she "witnessed strongly biased opinions regarding cases, unprofessional behavior, unethical decisions, and a frighteningly unfair practice of tribal morality."

Parole Board spokeswoman JoEllen Smith said in a statement that the state's prisons agency "has a very open policy review process that encourages and solicits input and suggestions from all employees of the agency." She added that Annette Chambers-Smith, Gov. Mike DeWine's nominee to head the state's prisons agency, "intends to conduct a comprehensive review of board policies and procedures."

*Here's more on the concerns laid out by Smith, who was appointed by Republican Gov. John Kasich to the board in 2015.*

**Claim:** Parole Board members are regularly distracted during parolees' hearings
Shirley Smith said board members conduct five to 10 hearings in a day via videoconference, giving themselves no time for lunch and little time to prepare for an individual's case. A parolee, who often has been waiting years for a hearing, sees a board that is often eating during a hearing not paying attention because they are reviewing documents from an upcoming case, said Smith, admitting she, too, was guilty of the practice while on the board.

"You have to face parole board members that seemingly are rude, because they're eating, they're not paying attention, they don't look up, and sometimes they don't ask questions," Smith said. Smith said, though, that this usually didn't occur during death-penalty clemency hearings, as (unlike parole hearings) they are open to the public.

**Response:** JoEllen Smith, a spokeswoman for the Ohio Department of Rehabilitation and Correction, didn't address this specific claim in her response.
**Claim:** Parole Board members often miss hearings but still vote
Shirley Smith said when an inmate comes before the Parole Board, often only a fraction of board members are there to hear their argument for parole— sometimes because they're attending self-defense training classes required for all parole board members. However,

absent board members are still allowed to vote on whether to grant parole to inmates whose hearings they did not attend – "ghost votes," as Smith dubbed them. "You can't make an assessment of a person if you're not there," Smith said. "So how are you basing your decision on whether he's eligible or whether he's not?"

Response: JoEllen Smith didn't address this specific claim in her response.
Claim: Parole Board members are harsher against minorities
Shirley Smith said the board frequently "emasculated" black men who came before them and were "harsher and stricter with people of color." During questioning, Smith said, "I think they treat them like they're dogs sometimes." She also said that a couple months ago, a Spanish-speaking inmate with little understanding of English came before the board. Smith said she proposed rescheduling his hearing so an interpreter could be brought in, but that board member Mark Houk argued against it. "Well, why should we do that?" she quoted Houk as saying. "That's costing the state money. I can just give him five years based on what he's in for."

Response: JoEllen Smith didn't address this specific claim, and she declined to make Houk available for comment (Houk could not independently be reached for comment. Parole Board members' contact information could not be found online).
Claim: Board members and staff lack racial or professional diversity
Shirley Smith said it's a problem that most of the Parole Board and almost all their staff members are white. "If you're dealing with people who are not a person of color, then that makes that person who comes up for parole very reluctant to talk about their issues, to trust anybody," Smith said. Smith also said that the Parole Board shouldn't be composed of mostly former parole officers, but should include others such as mental-health professionals and current or former lawmakers who can communicate with the legislature about the need for law changes.

Response: JoEllen Smith said in a statement that Annette Chambers-Smith, Gov. Mike DeWine's nominee to head the state's prisons agency, "will be looking to add members who will create an inclusive and diverse Board."
Claim: Board members are often unfairly swayed by prosecutors and victims
Shirley Smith said the Parole Board will sometimes recommend someone for parole, but then change their mind once they hear from victims or prosecutors – particularly Franklin County Prosecutor Ron O'Brien. "He'll come in, and he's very disparaging to the family, and he talks about the offender so badly that it brings them [board members] pause whether that person should be released," she said. Smith suggested that prosecutors should be barred altogether from parole hearings.

Response: O'Brien stated in an email that barring prosecutors from parole hearings would violate the "_____ of the Ohio Constitution and a related statute known as _____. He added that Ohio law suggests that prosecutors get involved in parole hearings, as state law requires county prosecutors to be notified when inmates from their county are eligible for parole. "I do not appear very often at a Parole board hearing unless the case justifies it," O'Brien stated, "and if I do I hope that I make an effective presentation as Ms. Smith apparently seems to suggest."
Claim: Board members have "a tribal relationship"

Shirley Smith said most of the board members are current or former parole officers, so they are biased against prospective parolees who were convicted of violence against a police officer or a corrections officer. She also said the board is dominated by DRC Court and Community director Cynthia Mausser, who she claimed is close friends with Parole Board Chair Trayce Thalheimer. "You had no way of going outside of at least the two of them – the chair and the boss above the chair – and getting anything done," Smith said.

Response: JoEllen Smith didn't address this claim, and she declined to make Mausser available for comment.
Smith said she retired from the board in December out of "frustration" with how the Parole Board was operating. In February 2018, she said raised her voice during a Parole Board meeting because of the way some board members were treating an inmate during a hearing. Smith said three board members subsequently filed complaints about her "outburst," but no action ended up being taken against her.

"That's one of the ways that they shut people down, is they threaten them with these investigations, then they'll find them not guilty," Smith said.

Smith said she hoped lawmakers would take up Parole Board reforms. And indeed, state Rep. Bill Seitz said he and two Republican state senators – Peggy Lehner and John Eklund – have talked about introducing legislation to do just that.

However, Seitz – a Cincinnati Republican who has worked for years on criminal-justice issues – said their discussions have so far focused on the Parole Board's frequent habit of denying parole to inmates because of "the nature of their offense." Seitz said he wants to require the board to give additional reasons when denying a parole.

When told of Smith's claims that Parole Board members are constantly distracted during hearings, Seitz said, "It sounds to me like some of these people are not taking their job as seriously as they need to."

However, Seitz added, "I don't know how we could legislate around that problem."

OPINION, EDITORIALS, LETTERS AND COLUMNS

# Ohio Parole Board needs to be fully staffed and it needs to hold its meetings in public: editorial

Posted Feb 1



Former state Sen. Shirley Smith in a 2010 file photo. Smith, who served on the Ohio Parole Board for several years, charges that the board is too secretive,

https://www.cleveland.com/opinion/2019/02/ohio_parole_board_reforms_are.html          2/6/2019