## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LANCE POUGH,<br><br>        Plaintiff,<br>v.<br><br>MIKE DEWINE, et al.,<br><br>        Defendants. | Case No. 2:21-cv-00880-MHW-CHG<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Caroline H. Gentry |

### MOTION FOR PROTECTIVE ORDER AND TO QUASH THIRD-PARTY DEPOSITION SUBPOENA TO REPORTER JEREMY PELZER

Non-party Jeremy Pelzer, a reporter for Cleveland.com/Advance Ohio, by and through his undersigned counsel, hereby moves this Court pursuant to Federal Rules of Civil Procedure 26 and 45 to quash the deposition subpoena issued by plaintiff Lance Pough requiring Mr. Pelzer to appear for deposition, and to enter a protective order preventing Mr. Pelzer from being deposed in this matter.

The grounds for this motion are set forth in the attached Memorandum in Support, which is incorporated herein by reference.

Dated: July 26, 2023

Respectfully submitted,

By: */s/Daniel M. Kavouras*
    Daniel M. Kavouras (Ohio Bar No. 0089773)
    Taylor M. Thompson (Ohio Bar No. 0098113)
    Baker & Hostetler LLP
    127 Public Square, Suite 2000
    Cleveland, OH 44114
    T: 216-861-7099
    F: 216-621-0740
    dkavouras@bakerlaw.com
    tathompson@bakerlaw.com
    *Attorneys for Non-Party Jeremy Pelzer*

## MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH THIRD-PARTY DEPOSITION SUBPOENA TO REPORTER JEREMY PELZER

Plaintiff Lance Pough issued a deposition subpoena (the "Subpoena") to non-party reporter Jeremy Pelzer solely to "verify and authenticate" a 2019 article written by Mr. Pelzer entitled "Ohio Parole Board is secretive and 'frighteningly unfair,' former member Shirley Smith says" (the "Article"), copies of which are attached as Exhibits A and A-1 to Mr. Pough's Complaint. (2d Am. Compl., Dkt. No. 20-1, Exs. A, A-1.)

Because Mr. Pelzer's testimony is not necessary to accomplish Mr. Pough's stated objective, and because the Subpoena represents an improper "attempt[] by [a] civil litigant[] to turn [a] non-party journalist[] . . . into their private discovery agent[]," *Marquinez v. Dole Food Co. Inc.*, No. 1:20-MC-042, 2021 WL 122997, at *9 (S.D. Ohio Jan. 13, 2021) (quotations omitted), thereby imposing an undue burden on Mr. Pelzer's First Amendment rights as a member of the press, the Court should quash the Subpoena and issue a protective order prohibiting Mr. Pelzer from being deposed in this case.

## LEGAL STANDARD

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quotations omitted). And under Rule 26, discovery must seek information that is both "relevant . . . and proportional to the needs of the case," considering, among other things, "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If the discovery sought falls outside those parameters, or is otherwise "unreasonably cumulative or duplicative, or can be obtained from some other source that is more

convenient, less burdensome, or less expensive," the Court "must" issue a protective order limiting such discovery, or quash a subpoena seeking it. Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d)(1), 45(d)(3)(A)(iv) (Court "must quash or modify" any subpoena that "subjects a person to undue burden" and the issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *Hendricks*, 275 F.R.D. at 253 (collecting cases quashing subpoenas that exceed the scope of Rule 26).

## ARGUMENT

### I. Mr. Pelzer's testimony is irrelevant, and any information in his possession can be obtained through other, less burdensome sources.

Jeremy Pelzer is a journalist. (Pelzer Decl., attached as Exhibit A, ¶ 1.) He does not work for the Ohio Department of Rehabilitation and Corrections (ODRC). (*Id.*) He is not a member of the parole board. (*Id.*) He has no firsthand knowledge to support or refute the allegations made by Shirley Smith in the Article. (*Id.* ¶ 5.) He has no information—firsthand or otherwise—about Mr. Pough, his criminal convictions, or his parole proceedings. (*Id.* ¶¶ 5, 7.) Nor does the Article itself have anything to do with Mr. Pough—it merely catalogs criticisms of the parole process without identifying any particular inmate. (*See* 2d Am. Compl., Dkt. No. 20-1, Exs. A, A-1.)

In short, Mr. Pelzer merely reported statements made by others with actual knowledge of the parole process; Mr. Pelzer himself has no relevant information or knowledge that would justify requiring him to sit for deposition in this case. *See Huang v. Ohio State Univ.*, No. 2:19-CV-1976, 2023 WL 3113703, at *2 (S.D. Ohio Apr. 27, 2023) (denying motion to reconsider ruling quashing subpoena where "none of the witnesses have any personal knowledge" of the facts, and thus "could [not] offer relevant and admissible testimony"); *see also Pannek v. U.S. Bank Nat'l Ass'n*, No. 1:19-CV-852, 2021 WL 5533749, at *9 (S.D. Ohio July 21, 2021)

3

(granting protective order in part because witness's "only knowledge of the underlying facts relevant to this case were discovered in her role as in investigator").

Nevertheless, Mr. Pough claims that Mr. Pelzer's deposition is necessary to "verify and authenticate" the contents of the Article—particularly, the quotes given by Shirley Smith, a former parole board member, and JoEllen Smith, the then-spokesperson for the ODRC. (*See* Pough Am. Mot. for Leave to Conduct Telephonic Depo., Dkt. No. 128, at 3.) But that argument is fundamentally flawed. *Cf. United States v. Blanton*, 534 F. Supp. 295 (S.D. Fla. 1982) (subpoena quashed where government sought reporter's testimony for the sole purpose of verifying the quotations attributed to the defendant).

First, as a matter of law, Mr. Pelzer's testimony is not necessary to "authenticate" the Article. News articles are self-authenticating. Fed. R. Evid. 902(6).

Second, Mr. Pelzer's testimony is not necessary to "verify" the accuracy of the quotations in the Article. That can be done in any number of ways that would not require Mr. Pelzer to sit for deposition, not the least of which would be to simply confirm *through depositions of the sources themselves* that their quotes are accurate. *See Tolliver v. Abuelo's Int'l, LP*, No. 2:20-CV-3790, 2021 WL 3188420, at *2–4 (S.D. Ohio July 28, 2021) (collecting cases quashing subpoenas where discovery available through other parties).

This approach would not only eliminate the burden on Mr. Pelzer, but would not impose any additional burdens on any non-parties. Unlike Mr. Pelzer, Shirley Smith—the primary source of quotations on which Mr. Pough is likely to rely—is unquestionably a relevant witness in this case. Not only do her quotes in the Article (based on her firsthand knowledge of the parole process) largely form the basis for Mr. Pough's claims, but Mr. Pough also alleges that Smith was *present at Mr. Pough's parole hearing*. (2d Am. Compl., Dkt. No. 20, ¶ 22(A).)

4

Similarly, JoEllen Smith is a former ODRC employee who may have *firsthand* information that could support or refute Mr. Pough's claims; alternatively, the ODRC itself could confirm or deny that her statements on its behalf were accurately reported.

Moreover, even with Mr. Pelzer's testimony, the quotations attributed to Shirley Smith and JoEllen Smith in the story would remain inadmissibly hearsay. At the time of her statements, Shirley Smith was no longer a member of the parole board, and her statements therefore do not qualify as a party admission (nor is the ODRC itself a party to the case in any event). (*See id.* ¶ 25); *Burns v. Republic Sav. Bank*, 25 F. Supp. 2d 809, 820 (N.D. Ohio 1998) (statement by former board member not admissible as admission of party opponent where declarant was not a board member at the time statements were made). To introduce evidence of Shirley Smith's observations, Mr. Pough will need Smith herself to testify. Mr. Pelzer's testimony is therefore superfluous at best.[1]

Accordingly, because Mr. Pelzer cannot provide any information that is not obtainable through other, less burdensome sources, the Court should quash the Subpoena and issue a protective order barring Mr. Pelzer's deposition in this case.

II.  **The Subpoena imposes an undue burden on Mr. Pelzer's First Amendment interests that is disproportional to the needs of this case.**

Even if the Court finds that Mr. Pelzer's testimony could have some incremental relevance in this case beyond that available from other necessary witnesses, the Court should nevertheless quash the Subpoena, because requiring Mr. Pelzer to sit for deposition imposes an undue burden on Mr. Pelzer's First Amendment rights.

---

[1] Another alternative would be to serve requests on the defendants under Federal Rule of Civil Procedure 34 seeking admissions that the Article is authentic and that the quotes therein accurately reflect the statements made by Shirley Smith and JoEllen Smith. This likewise properly places the burden of discovery on the parties, rather than on non-parties like Mr. Pelzer.

5

Whether or not the First Amendment grants journalists a qualified privilege from discovery in civil cases,[2] the Sixth Circuit has made clear that courts deciding the validity of subpoenas to the press must "'make sure that the proper balance is struck between freedom of the press and the obligation of all citizens to give relevant testimony.'" *Marquinez v. Dole Food Co. Inc.*, No. 1:20-MC-042, 2021 WL 122997, at *9 (S.D. Ohio Jan. 13, 2021) (quoting *In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987)); *see also National Labor Relations Board v. Midland Daily News*, 151 F.3d 472, 475 (6th Cir. 1998) (holding that the First Amendment protected a newspaper publisher from being forced by subpoena to divulge the identity of an advertiser).

The First Amendment guarantee of a free press indisputably includes protection for "[n]ews gathering" activities, such as conducting interviews with current and former public officials. *See CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) ("News gathering . . . qualifies for First Amendment protections"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576, 599 (Stewart, J., concurring) ("The right to publish implies a freedom to gather information").

Accordingly, "[g]iven the important role that newsgathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." *Marquinez*, 2021 WL 122997, at *9 (quoting *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 406 (E.D. Mich. 2003)). As the *Marquinez* court explained:

---

[2] Compare *In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987) (rejecting qualified privilege in response to grand jury subpoena in criminal matter) with *Southwell v. S. Poverty L. Ctr.*, 949 F. Supp. 1303, 1312 (W.D. Mich. 1996) (interpreting *In re Grand Jury* as limited to criminal grand juries and adopting view of "most courts" that the First Amendment affords journalists a qualified privilege in civil cases).

6

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation . . . And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Id.* (quoting *In re DaimlerChrysler*, 216 F.R.D. at 406); *see also Gonzales v. Nat'l Broadcasting Co., Inc.*, 194 F.3d 29, 35 (2nd Cir. 1999) (same).

Those fundamental First Amendment interests plainly outweigh any limited value in deposing Mr. Pelzer—a journalist with no firsthand knowledge of any fact relevant to the case, and whose only role would be to confirm the accuracy of quotes attributed to persons whose testimony is already crucial to the case, rendering Mr. Pelzer's testimony, at best, redundant.

For this additional reason, the Court should quash the Subpoena, and grant a protective order prohibiting Mr. Pelzer's deposition.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the foregoing motion quash the pending deposition Subpoena issued to non-party Jeremy Pelzer, enter a protective order preventing Mr. Pelzer from being deposed in this matter, and grant any and all other just and proper relief.

Dated: July 26, 2023                             Respectfully submitted,

By:  */s/Daniel M. Kavouras*
     Daniel M. Kavouras (Ohio Bar No. 0089773)
     Taylor M. Thompson (Ohio Bar No. 0098113)
     Baker & Hostetler LLP
     127 Public Square, Suite 2000
     Cleveland, OH 44114
     T: 216-861-7099
     F: 216-621-0740
     dkavouras@bakerlaw.com
     tathompson@bakerlaw.com

*Attorneys for Non-Party Jeremy Pelzer*

**RULE 26(a)(1) CERTIFICATION**

The undersigned counsel hereby certifies that he has conferred in good faith with plaintiff Lance Pough in an attempt to resolve the issues raised in this motion, both by telephone and in written correspondence, and Mr. Pough has refused to withdraw the subpoena unless the defendants will stipulate to the admissibility of the Article at trial, which the undersigned understands has already been proposed by Mr. Pough and rejected by the defendants.



*/s/Daniel M. Kavouras*
Attorney for Non-Party Jeremy Pelzer

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a copy of the foregoing was filed electronically on July 26, 2023. Service and notice of the pleading has been distributed to the attorneys of record via the CM/ECF system. Service of the pleading has also been made upon Plaintiff, Lance Pough, via regular and overnight mail, on July 26, 2023, at the following address:

> Lance Pough
> A653422
> MANSFIELD CORRECTIONAL INSTITUTION
> P.O. Box 788
> 1150 NORTH MAIN STREET
> MANSFIELD, OH 44901



*/s/Daniel M. Kavouras*
Attorney for Non-Party Jeremy Pelzer