# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LANCE POUGH,<br><br>                Plaintiff,<br>   v.<br><br>MIKE DEWINE, et al.,<br><br>                Defendants. | Case No. 2:21-cv-00880-MHW-CHG<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Caroline H. Gentry |

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S FOURTH MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM NON-PARTY JEREMY PELZER

Plaintiff Lance Pough is seeking to compel non-party reporter Jeremy Pelzer to produce documents relating to a January 2019 article written by Mr. Pelzer entitled "Ohio Parole Board is secretive and 'frighteningly unfair,' former member Shirley Smith says" (the "Article"), copies of which are attached as Exhibits A and A-1 to Mr. Pough's Complaint (2d Am. Compl., Dkt. No. 20-1, Exs. A, A-1) pursuant to a subpoena served on Mr. Pelzer on August 10, 2023[1] (the "Subpoena"), a copy of which is appended to Mr. Pough's motion to compel (ECF No. 146).

The Subpoena seeks essentially two categories of documents:

(1) Mr. Pelzer's unpublished work product "used to create" or "support" the Article, including interview transcripts, recordings, notes, emails, texts or other documents relating to the claims made by Shirley Smith in the Article (Subpoena Requests No. 1 and No.3); and

---

[1] Mr. Pough's motion incorrectly states that the Subpoena was served on August 6, 2023. (Fourth Mot. to Compel, ECF No. 146, at 2, 13.) The return of service, however, indicates it was served on Mr. Pelzer's spouse on August 10, 2023. (See Return of Service, ECF No. 135.)

   (2) Documents or communications "received from ODRC [Ohio Department of

     Rehabilitation and Correction] and it's [sic] spokeswoman JoEllen Smith addressing"

     Shirley Smith's claims (Subpoena Request No. 2).

(ECF No. 146, Subpoena.)

  As discussed below, however, Mr. Pough's Subpoena seeks documents largely available from other necessary witnesses with firsthand knowledge relevant to his claims, and otherwise represents an improper "attempt[] by [a] civil litigant[] to turn [a] non-party journalist[] . . . into their private discovery agent[]," *Marquinez v. Dole Food Co. Inc.*, No. 1:20-MC-042, 2021 WL 122997, at *9 (S.D. Ohio Jan. 13, 2021) (quotations omitted), thereby imposing an undue burden on Mr. Pelzer's First Amendment rights as a member of the press. Accordingly, the Court should deny the motion to compel and should quash the Subpoena to Mr. Pelzer.

## LEGAL STANDARD

  "[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quotations omitted). And under Rule 26, discovery must seek information that is both "relevant . . . and proportional to the needs of the case," considering, among other things, "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). If the discovery sought falls outside those parameters, or is otherwise "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," that discovery is not permitted. Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d)(1), 45(d)(3)(A)(iv) (Court "must quash or modify" any subpoena that "subjects a person to undue burden" and the issuing party "must take

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *Hendricks*, 275 F.R.D. at 253 (collecting cases quashing subpoenas that exceed the scope of Rule 26).

## ARGUMENT

I. **The Subpoena improperly seeks documents received by Mr. Pelzer from sources with firsthand knowledge that can be obtained through other, more convenient sources.**

Jeremy Pelzer is a journalist. (Pelzer Decl., ECF No. 132-1, ¶ 1.) He does not work for the Ohio Department of Rehabilitation and Corrections (ODRC). (*Id.*) He is not a member of the parole board. (*Id.*) He has no firsthand knowledge to support or refute the allegations made by Shirley Smith in the Article. (*Id.* ¶ 5.) He has no information—firsthand or otherwise—about Mr. Pough, his criminal convictions, or his parole proceedings. (*Id.* ¶¶ 5, 7.) Nor does the Article itself have anything to do with Mr. Pough—it merely catalogs general criticisms of the parole process without identifying any particular inmate. (*See* 2d Am. Compl., Dkt. No. 20-1, Exs. A, A-1.)

The only documents in Mr. Pelzer's possession reflect general information about the parole board *obtained from other necessary witnesses in this matter*—namely, from Shirley Smith and the ODRC (including its spokeswoman, JoEllen Smith). Shirley Smith is not only the primary source of the quotes in the Article (which largely form the basis for Mr. Pough's claims), she is a former parole board member herself with firsthand knowledge of its operations, and as Mr. Pough alleges in his Complaint, she was also *present at Mr. Pough's own parole hearing*. (2d Am. Compl., Dkt. No. 20, ¶ 22(A).) To the extent she had written communications or shared documents with Mr. Pelzer, she can produce them in this case. Similarly, JoEllen Smith is a former ODRC employee with firsthand information about her statements in the Article, and access to any written communications she had with Mr. Pelzer. And the ODRC—

3

which operates the parole board and employed each of the defendants—is unquestionably subject to document discovery concerning communications and information shared with Mr. Pelzer by its employees (including JoEllen Smith), even if the ODRC itself is immune from liability in this case.

Mr. Pough can and has sought discovery from those witnesses (*see* Order, ECF No. 110), and there is no reason to impose discovery obligations on yet another party whose information is entirely derivative of information in the possession of those relevant witnesses. *See Tolliver v. Abuelo's Int'l, LP*, No. 2:20-CV-3790, 2021 WL 3188420, at *2–4 (S.D. Ohio July 28, 2021) (collecting cases quashing subpoenas where discovery available through other parties); *see also Pannek v. U.S. Bank Nat'l Ass'n*, No. 1:19-CV-852, 2021 WL 5533749, at *9 (S.D. Ohio July 21, 2021) (granting protective order in part because witness's "only knowledge of the underlying facts relevant to this case were discovered in her role as in investigator").

Thus, to the extent Mr. Pough's subpoena seeks communications between Mr. Pelzer and Shirley Smith, JoEllen Smith, or anyone else at the ODRC, or information provided to Mr. Pelzer by those sources, those documents can be obtained from those other necessary witnesses that Mr. Pough has already subpoenaed in this matter, without imposing discovery burdens on an additional third party whose only involvement here was as a journalist, gathering general information after the fact from parties with firsthand knowledge, none of which had anything to do with Mr. Pough or his particular interactions with the parole board.

**II.     The Subpoena imposes an undue burden on Mr. Pelzer's First Amendment interests that is disproportional to the needs of this case.**

The Court should deny the motion to compel and quash the Subpoena for a second, independent reason: requiring Mr. Pelzer to produce his journalistic work product imposes an undue burden on Mr. Pelzer's First Amendment rights as a non-party journalist.[2]

In his motion, Mr. Pough argues that the Sixth Circuit has rejected any First Amendment privilege or protections for journalists in responding to subpoenas, citing *In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987). (Fourth Mot. to Compel, ECF No. 146, at 7.) But courts have subsequently declined to apply *In re Grand Jury* outside the context of criminal grand juries. *See Southwell v. S. Poverty L. Ctr.*, 949 F. Supp. 1303, 1312 (W.D. Mich. 1996) (interpreting *In re Grand Jury* as limited to criminal grand juries and adopting view of "most courts" that the First Amendment affords journalists a qualified privilege in civil cases).

Regardless of whether *Southwell* correctly interprets *In re Grant Jury*, however, the Sixth Circuit has made clear that courts deciding the validity of subpoenas to the press must "'make sure that the proper balance is struck between freedom of the press and the obligation of all citizens to give relevant testimony.'" *Marquinez v. Dole Food Co. Inc.*, No. 1:20-MC-042, 2021 WL 122997, at *9 (S.D. Ohio Jan. 13, 2021) (quoting *In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987)); *see also National Labor Relations Board v. Midland Daily News*, 151 F.3d 472, 475 (6th Cir. 1998) (holding that the First Amendment protected a newspaper publisher from being forced by subpoena to divulge the identity of advertiser). That is in addition to the

---

[2] Mr. Pough focuses his burden argument on the costs associated with transmitting responsive documents, and indicates his efforts to reduce that burden by accepting email delivery of such documents and paying for any necessary postage. (*See* Fourth Mot. to Compel, ECF No. 146, at 3, 15.) But as outlined below, it is the burden on Mr. Pelzer's First Amendment rights, and not the cost of transmitting responsive documents, that require the Court to deny the motion to compel.

protections already afforded Mr. Pelzer as a third party to this litigation. *See Atlas Indus. Contractors LLC v. In2Gro Techs. LLC*, No. 2:19-CV-2705, 2020 WL 1815718, at *3 (S.D. Ohio Apr. 10, 2020) ("'[T]he status of a person as a non-party is a factor that weighs against' compelling compliance with a subpoena.") (quoting *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013)).

The First Amendment guarantee of a free press indisputably includes protection for "[n]ews gathering" activities, such as conducting interviews with current and former public officials. *See CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) ("News gathering . . . qualifies for First Amendment protections"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576, 599 (Stewart, J., concurring) ("The right to publish implies a freedom to gather information").

Accordingly, "[g]iven the important role that newsgathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." *Marquinez*, 2021 WL 122997, at *9 (quoting *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 406 (E.D. Mich. 2003)). As the *Marquinez* court explained:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties— particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation . . . And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Id.* (quoting *In re DaimlerChrysler*, 216 F.R.D. at 406); *see also Gonzales v. Nat'l Broadcasting Co., Inc.*, 194 F.3d 29, 35 (2nd Cir. 1999) (same).

Those fundamental First Amendment interests plainly outweigh any limited value in compelling Mr. Pelzer—a journalist with no firsthand knowledge of any fact relevant to the case—to comply with the Subpoena. Indeed, aside from written communications with other necessary witnesses already being subpoenaed in this action, the only documents in Mr. Pelzer's possession are journalistic work product—for example, drafts of the Article and snippets of unpublished interviews with sources[3]—none of which pertain to Mr. Pough's parole decisions and which otherwise have no relevance to the claims at issue in this case.

Again, Mr. Pough can and has subpoenaed parties with actual knowledge relating to his claims. (*See* Order, ECF No. 110.) The additional discovery burdens on Mr. Pelzer are far outweighed by the threat to his First Amendment interests in protecting his journalistic process and work product from intrusion by private litigants seeking to use the press as a litigation tool. *See Marquinez*, 2021 WL 122997, at *9.

For this additional reason, the Court should deny the motion to compel and quash the Subpoena to Mr. Pelzer.

### III. At minimum, the Court should exclude documents protected by the attorney-client privilege.

To the extent the Court requires Mr. Pelzer to produce any responsive documents, the Court should exclude from production any documents protected by the attorney-client privilege.

---

[3] Although Mr. Pough represents that he spoke with Mr. Pelzer in 2021 and Mr. Pelzer indicated he had certain interview recordings, Mr. Pough's assumption that Mr. Pelzer has complete recordings and/or transcripts of every interview he conducted for purposes of the Article is mistaken. The only recordings in Mr. Pelzer's possession are partial and have nothing to do with Mr. Pough or his parole decision, and therefore have no relevance to the case.

On its face, Rule 26 specifically limits discovery to "any *nonprivileged* matter." Fed. R. Civ. P. 26(b)(1) (emphasis added). The Subpoena, however, contains no such limitation.

Mr. Pough's motion assumes that Mr. Pelzer's privilege objections relate to communications with the sources quoted in the Article, and claims any such privilege has been waived by publishing quotes from those sources. (Fourth Mot. to Compel, ECF No. 146, at 11-12.) That is not, however, the basis for Mr. Pelzer's privilege claim.

Rather, the Subpoena purports to require Mr. Pelzer to produce all documents relating to the Article and its subject-matter, which would necessarily include communications with counsel concerning the Subpoena itself, which by definition pertain to the Article and its source material. Those communications are both irrelevant and protected by the attorney-client privilege. At a minimum, such privileged communications should be excluded from any order requiring production.

## CONCLUSION

For all of the foregoing reasons, the Court should deny the motion to compel, quash the Subpoena issued to non-party Jeremy Pelzer, and grant Mr. Pelzer any and all other just and proper relief.

Dated: November 2, 2023

Respectfully submitted,

By: */s/Daniel M. Kavouras*
Daniel M. Kavouras (Ohio Bar No. 0089773)
Taylor M. Thompson (Ohio Bar No. 0098113)
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
T: 216-861-7099

F: 216-621-0740
dkavouras@bakerlaw.com
tathompson@bakerlaw.com

*Attorneys for Non-Party Jeremy Pelzer*

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a copy of the foregoing was filed electronically on November 2, 2023. Service and notice of the pleading has been distributed to the attorneys of record via the CM/ECF system. Service of the pleading has also been made upon Plaintiff, Lance Pough, via regular mail, on November 2, 2023, at the following address:

> Lance Pough
> A653422
> MANSFIELD CORRECTIONAL INSTITUTION
> P.O. Box 788
> 1150 NORTH MAIN STREET
> MANSFIELD, OH 44901

*/s/Daniel M. Kavouras*
Attorney for Non-Party Jeremy Pelzer