IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LANCE POUGH, | Case No. 2:21-cv-00880 |
| Plaintiff, | District Judge Michael H. Watson |
| vs. | Magistrate Judge Caroline H. Gentry |
| MIKE DEWINE, *et al.*, | |
| Defendants. | |

## DECISION AND ORDER

Plaintiff, an Ohio inmate proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983 for alleged violations of his civil rights. He asserts that members of the Ohio Parole Board violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment by using his race as a factor when deciding to deny his application for parole and to impose a ten-year waiting period before he could renew that application. (Complaint, Doc. No. 20.)

This case is now before the Court upon the following motions: Plaintiff's First Motion to Compel (Doc. No. 58); Plaintiff's Second Motion to Compel (Doc. No. 83); Plaintiff's Motion for Extension of Time (Doc. No. 139); Plaintiff's Third Motion to Compel (Doc. No. 141); Plaintiff's Motion for Subpoena Duces Tecum (Doc. No. 142); Plaintiff's Motion for Service (Doc. No. 143); Plaintiff's Fourth Motion to Compel (Doc. No. 146); Plaintiff's Motion to Withdraw Requests (Doc. No. 151); Plaintiff's First Motion Requesting Order Compelling Discovery (Doc. No. 155); Plaintiff's Second

Motion Requesting Order Compelling Discovery (Doc. No. 156); and Plaintiff's Amended Motion in Reply (Doc. No. 159). The Court addresses each motion below.

## I. PLAINTIFF'S FIRST AND SECOND MOTIONS TO COMPEL (DOC. NOS. 58 & 83) AND FIRST AND SECOND MOTIONS REQUESTING ORDER COMPELLING DISCOVERY (DOC. NOS. 155 & 156)

The undersigned Magistrate Judge previously considered Plaintiff's First (Doc. No. 58) and Second (Doc. No. 83) Motions to Compel along with several related filings. (Decision & Order, Doc. No. 110.) In those Motions, Plaintiff sought an order compelling Defendants to respond to the following document requests:

5. The statistical data of all prisoners (please identify race) who went up for parole was granted parole their first time up for parole and why, for the following years (Jan. 1 of 2011 to Jan. 23 of 2019).

6. The statistical data of all prisoners (please identify the race) who went up for parole and were denied parole and why, and how many times they had been up for parole before and was denied parole for the following years (Jan. 1 of 2011 to Jan. 23 of 2019).

7. The statistical data of all prisoners (please identify the race) who were denied parole and given lengthy, harsh flops, or continuances between the following years: Jan. 1 of 2011 – Jan. 23 of 2019. Please provide the reasons why the prisoners were given these continuances (flops), and the length of each flop.

8. The statistical data of the voting sheets for each prisoner (please identify the race) who was denied parole between Jan. 1 of 2011 to Jan. 23 of 2019. (The Plaintiff as well).

9. The statistical data of the parole board members voting sheets for each prisoner who was denied parole and given a continuance and flop, and the voting sheets related to the continuance and flops for the years of Jan. 1 of 2011 to Jan. 23 of 2019.

10. The statistical data of all prisoners (identify the race) who were granted parole from June 1 of 2019 – September 13 of 2019, as well as the parole board members voting sheets for each case.

11. The statistical data of all prisoners who were (identify the race) denied parole and given a continuance or flop by the Ohio Parole Board, and please provide the length of the flop or continuance for the following years – June 1 of 2019 to September 13 of 2019. Please provide the voting sheets as well.

Revised Request #1: Please provide the statistical data for prisoners (please provide the race) with a homicide related crime who was denied parole their first time up (initial hearing) for the years Jan. 23, 2019-June 1, 2019.

Request F: All statistical data for inmates, please provide race, with a homicide related crime, who was denied parole their first time up for a parole hearing for the years: September 13, 2019 to Jan. 23, 2022. Also please provide all the statistical data for the length of each continuance given to inmate as well.

With minor variations, Defendants responded to each of these requests with the following objection:

> Compound request. Vague. Ambiguous. Overly broad. Unduly burdensome. Unlimited in subject and oppressive. Irrelevant and not reasonably calculated to lead to discovery of admissible evidence and seeks the production of documents regarding matters not contained in Plaintiff's Complaint. Outside scope of Complaint and Defendants' knowledge. The scope of discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Ohio Execution Prot. Lit.* (*Fears v. Kasich*), 845 F.3d 231, 236 (6th Cir. 2016), *citing*, Fed. R. Civ. P. 26(b)(2)(C)(iii). Responding to this request would require Defendants to prepare a compilation of data. Further, Plaintiff is ineligible to receive records of other inmates. Ohio Administrative Code 5120:1-1-36 (E).

(Doc. No. 86, PageID 808.)

Plaintiff argued that Defendants waived their objections by failing to raise them within the time limit provided by Fed. R. Civ. P. 33 and 34. (Doc. No. 58, PageID 507; Doc. No. 83, PageID 748.) Defendants responded that, because they could show good

3

cause for delay, the Court should excuse the untimeliness of their objections.[1] (Doc. No. 63, PageID 594-95.) The Court declined to reach this issue, overruled Defendants' objections on the merits and ordered Defendants to respond to Plaintiff's discovery requests, which the undersigned Magistrate Judge construed as being interrogatories rather than document requests.[2] (Doc. No. 110, PageID 1166 & 1169-71.)

Defendants filed objections to that Order, setting forth additional arguments and factual support. (Doc. No. 111.) On October 12, 2023, District Judge Watson sustained those objections and vacated the March 30 Order in part.[3] (Doc. No. 145.) Plaintiff subsequently filed a Motion Requesting This Honorable Court to Order the Defendants to Comply and Respond to Plaintiff's Third and Fourth Set of Requests at Revised Request #1 and Request F ("First Motion Requesting Order Compelling Discovery," Doc. No. 155) and a Motion Requesting This Honorable Court to Order the Defendants to Comply

---

[1] Defendants advanced this argument only with respect to Requests 5-11. They offered no explanation for their delay in responding to Revised Request #1 or Request F. (*See* Doc. No. 110, PageID 1170.)

[2] Defendants suggest that the Court "converted" Plaintiff's discovery requests from requests for production of documents under Fed. R. Civ. P. 34 to interrogatories under Fed. R. Civ. P. 33. (Doc. No. 111, PageID 1176.) This is incorrect. The Court *construed* Plaintiff's discovery requests as being interrogatories in substance despite the fact that Plaintiff, a *pro se* litigant, had incorrectly labeled them as document requests. It is well-established that filings by *pro se* litigants are "liberally construed" and must be held "to less stringent standards than formal pleadings drafted by lawyers." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016) (internal citations omitted). Similarly, *pro se* litigants are not strictly held to the labels they assign to discovery requests. *Riddick v. S&P Data Ohio*, No. 1:20-CV-01000, 2021 U.S. Dist. LEXIS 196149, at *12 (N.D. Ohio April 16, 2021) (citing to *Masacrenas v. Wagner*, No. 19-CV-2014, 2021 WL 1158190 (S.D. Cal. Mar. 26, 2021) (collecting cases to the effect that "[t]he rule of liberal construction . . . also applies to discovery propounded by *pro se* litigants")). *Accord Hendricks v. Ohio Dep't of Rehab. & Corr.*, No. 2:11-CV-00040, 2012 U.S. Dist. LEXIS 79572, at *19 (S.D. Ohio June 8, 2012) (Kemp, M.J.) ("[T]here is no question that pro se documents, ***including discovery requests***, are held to less stringent standards than documents drafted by lawyers and are to be liberally construed" (emphasis added)). As one Northern District of Ohio jurist colorfully explained: "[A] quacking and waddling bird isn't any less of a duck when someone untrained in ornithology has called it a 'chicken.'" *Riddick*, 2021 Dist. LEXIS 196149, at *12.

[3] Judge Watson's Order states that "[t]he portion of the [March 30] Order that addresses the Requests, pages 13-17, is vacated." (Doc. No. 145, PageID 1837 (emphasis adjusted).) Although portions of pages 13 and 17 of the March 30 Order include other issues, the undersigned construes the vacatur as applying only to the portion of the Order compelling Defendants to respond to Requests 5-11, Revised Request #1, and Request F. (*See* Doc. No. 150.)

and Respond to the Revised Discovery Requests Herein ("Second Motion Requesting Order Compelling Discovery," Doc. No. 156). Both motions, in essence, ask the Court to re-issue the vacated portion of its March 30 Order and compel Defendants to respond to Plaintiff's outstanding discovery requests.[4]

However, as Judge Watson observed, Defendants' new arguments and factual support included in their objections to the March 30 Order "change[d] the basis" for evaluating Plaintiff's discovery requests. (Doc. No. 145, PageID 1837 (internal citation omitted).) Although Defendants did previously object based on overbreadth and undue burden, their objections were cursory and lacked any factual or evidentiary support. Defendants did not explain why Plaintiff's requests were overbroad, or why responses would be unduly burdensome. *Kafele v. Javitch, Block, Eisen & Rathborne, LLP*, No. 2:03-CV-00638, 2005 U.S. Dist. LEXIS 48484, at *6 (S.D. Ohio April 4, 2005) (King, M.J.) ("As a general rule, all grounds for an objection shall be stated **with specificity** . . . The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection.") (emphasis added). Nor did Defendants provide evidence to support their objections in response to Plaintiff's Motions to Compel. Thus, based on the information before the Court at the time of its March 30 Order, Defendants' unexplained and unsupported objections to Plaintiff's discovery requests were not well-taken.

---

[4] Plaintiff's Second Motion Requesting Order Compelling Discovery purports to revise some of the outstanding discovery requests. (Doc. No. 156, PageID 1951-53.) However, as Defendants note (Doc. No. 158, PageID 2030-35), those revisions do not obviate Defendants' concerns. Therefore, they do not affect the Court's analysis.

5

Defendants' objections to the undersigned Magistrate Judge's March 30 Order, however, are quite different. Rather than relying on boilerplate objections, Defendants articulated their reasons for objecting to these particular requests. (E.g., Doc. No. 111, PageID 1181 (explaining that the terms "statistical data" and "all prisoners as to race" are vague).) Defendants also submitted affidavits from Brian Martin, Chief of the Ohio Department of Rehabilitation and Correction ("ODRC") Bureau of Research and Evaluation (Doc. No. 111-1) and Lisa Hoying, Chair of the Ohio Parole Board (Doc. No. 111-2). Defendants argued that these affidavits, which were not previously submitted, "provide critical information that set[s] forth why [compliance with the Court's March 30 Order] present[s] a near-impossible hurdle." (Doc. No. 111, PageID 1181.)

In his position as Bureau Chief, Mr. Martin compiles and summarizes statistical data for offender populations for both routine and special purposes. (Doc. No. 111-1, PageID 1188.) Mr. Martin spent approximately eight hours reviewing Plaintiff's discovery requests. In his affidavit, he explained the steps that would need to be taken to compile and organize the information requested by Plaintiff, as well as the difficulties underlying such a task. (*Id*. at PageID 1188-90.) Mr. Martin stated that the ambiguous phrasing of Plaintiff's discovery requests renders the relevant dataset unmanageable. (*Id*. at PageID 1189.) For example, Mr. Martin estimated that a full response to Plaintiff's discovery requests would require him to analyze more than 8,000 parole hearings. (*Id*.)

Similarly, Parole Board Chair Ms. Hoying estimates that it would take approximately twenty minutes to pull the decision sheet from each parole hearing and an additional thirty minutes to convert the information contained in that sheet into a useable

6

format. (Doc. No. 111-2, PageID 1194.) She therefore calculates that it would take approximately 7,000 working hours to fully respond to Plaintiff's Request No. 6, and approximately 2,800 working hours to fully respond to Plaintiff's Requests 8 and 9. (*Id*. at PageID 1194.)

This new information is unquestionably untimely. Defendants should have stated their objections with particularity and specificity in response to Plaintiff's discovery requests. Fed. R. Civ. P. 33(b)(2); Fed. R. Civ. P. 34(b)(2)(A). At the latest, Defendants should have explained the basis for their objections and provided all supporting affidavits in response to Plaintiff's Motions to Compel. Defendants should not have waited to provide this "critical information" until *after* the Court ruled in Plaintiff's favor.

Nevertheless, despite Defendants' untimeliness, the undersigned Magistrate Judge concludes that based upon the information that Defendants have now provided, their objections are well-taken. Rule 26(b) of the Federal Rules of Civil Procedure limits the scope of discovery to "nonprivileged matter that is relevant . . . and proportional to the needs of the case" in light of several factors, including "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Thus, as Defendants note (Doc. No. 111, PageID 1178), "district courts have discretion to limit the scope of discovery when the information sought is overbroad or unduly burdensome." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016).

Here, given the information Defendants have now provided, the Court concludes that Plaintiff's discovery requests are overbroad and unduly burdensome. The scope of discovery is broad but it is not without limits, *Fears v. Kasich*, 845 F.3d 231, 236 (6th

7

Cir. 2016), and nearly 10,000 hours of work to analyze over 8,000 parole decisions for unspecified "statistical data" exceeds those limits.

Therefore, the Court **DENIES** Plaintiff's First and Second Motions to Compel with respect to the discovery requests at issue. The undersigned granted Plaintiff's First Motion to Compel (Doc. No. 28) with respect to Requests 1-3. Defendants did not object to that portion of the March 30 Order, which remains in full force. However, in all other respects, the Court now **DENIES** Plaintiff's First Motion to Compel (Doc. No. 58) and Plaintiff's Second Motion to Compel (Doc. No. 83). Furthermore, the Court **DENIES** Plaintiff's First Motion Requesting Order Compelling Discovery (Doc. No. 155) and Second Motion Requesting Order Compelling Discovery (Doc. No. 166). Defendants need not respond to Plaintiff's Requests 5-11, Revised Request #1, or Request F.

## II. PLAINTIFF'S THIRD MOTION TO COMPEL (DOC. NO. 141)

In his Third Motion to Compel (Doc. No. 141),[5] Plaintiff appears to seek an Order compelling Defendants to produce documents in response to "Revised Request No. 1 at D" ("Request 1-D") and Revised Request No. 3 at #5" ("Request 3-5").[6] (*Id*. at PageID 1582.) Request 1-D refers to Plaintiff's "Master File at Ohio Parole Board" and requests production of the "[p]rosecutor[']s recommendation on release." (*Id*. at PageID 1577-78.)

---

[5] Plaintiff previously filed an identically captioned motion (Doc. No. 134) which he subsequently withdrew. (*See* Doc. No. 137; Doc. No. 138.)

[6] Plaintiff previously served Defendants with discovery requests, subsequently revised those requests, and later withdrew portions of some of those revised requests. (*See* Doc. No. 141, PageID 1577.) These repeated modifications make it difficult to identify precisely which documents Plaintiff wishes Defendants to produce.

8

Request 3-5 refers to "Plaintiff's Unit File" and requests production of "[j]udge's recommendations, police recommendations, community attitude." (*Id*. at PageID 1578.)

Plaintiff served Requests 1-D and 3-5 on Defendants on December 11, 2022 as part of his "Revised Requests for Production of Documents."[7] (Doc. No. 141-3, PageID 1603.) On March 16, 2023, Defendants served Plaintiff with objections to those requests. (Doc. No. 144-2.) In addition to twenty-one "general objections and reservations" (Doc. No. 144-2, PageID 1753), Defendants asserted the following objections with respect to Requests 1-D and 3-5:

> Defendants object to this discovery request as it is vague, ambiguous, overly broad, unduly burdensome, oppressive, calls for unbounded discovery and is not relevant. Further, records that identify the victim of a crime committed by the offender, or contain statements made by informants, statements made by prosecuting attorneys and judges concerning the offender are confidential in nature pursuant to Ohio Administrative Code 5120:1-1-36 (G) and (I).

(*Id*. at PageID 1757; *id*. at PageID 1760.) In response to Request 3-5, Defendants also cited case law. (*Id*. at PageID 1760.)

In his Third Motion to Compel, Plaintiff argues that Defendants' objections are improper boilerplate and are waived because they were untimely. (Doc. No. 141, PageID 1581.) Defendants have not responded to these assertions.

Generally, a party in receipt of a discovery demand must respond within thirty days after service. Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A). "[A]s a general rule, when a

---

[7] These requests were previously the subject of Plaintiff's First Motion to Compel (Doc. No. 58). The Court granted that motion in part and ordered Defendants to respond to the requests, among others, no later than April 30, 2023. (Doc. No. 110, PageID 1171.) However, the record reflects that Defendants responded to the requests *prior* to the Court's March 30 Order.

9

party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *North Am. Rescue Prods. v. Bound Tree Med., LLC*, No. 2:08-CV-00101, 2009 WL 4110889, at *7 (S.D. Ohio Nov. 19, 2009) (Kemp, M.J.) (internal citation omitted). However, the Court has the discretion to excuse the untimeliness of a defendant's objections to interrogatories upon a showing of good cause. *See, e.g.,* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). Although the rule that governs document requests does not contain similar language, "courts have nonetheless likewise granted such relief upon a showing of good cause" when objections to document requests are untimely. *Brown v. Warden Ross Corr. Inst.*, No. 2:10-CV-00822, 2011 U.S. Dist. LEXIS 52246, *6-7 (S.D. Ohio May 16, 2011) (Preston Deavers, M.J.).

Here, Defendants received Plaintiff's Revised Requests for Production of Documents, including Request 1-D and Request 3-5, in December of 2022. (Doc. No. 141-3, PageID 1603.) Their objections in March 2023 were two months beyond the time limit allowed by rule and were clearly untimely. Defendants have offered no explanation whatsoever for this delay. As a result, their objections are waived.[8]

However, as described above with respect to Plaintiff's First and Second Motions to Compel, Defendants' waiver of their objections does not end the Court's inquiry. "Even though objections have been waived, a court may examine the discovery requested and refuse to compel if the discovery has absolutely no relevance, far exceeds the bounds

---

[8] The Court notes that, in the past, Defendants stated that "*the Court* . . . waived the defendants' objections." (*E.g.*, Doc. No. 144-1, PageID 1738.) This is incorrect. Defendants have, themselves, waived their objections by first failing to comply with the Federal Rules of Civil Procedure, and then failing to provide good cause for doing so.

10

of fair discovery, or is patently improper." *R.B. v. Ford Motor Co.*, No. 4:05-CV-00481, 2006 U.S. Dist. LEXIS 113622, at *5, n. 2 (N.D. Fl. Aug. 9, 2006) (internal punctuation omitted) (collecting cases). The Court once again finds this principle dispositive.

Defendants correctly note that Plaintiff's Request 1-D and Request 3-5 seek documents that are confidential under Section 5120:1-1-36 of the Ohio Administrative Code. (Doc. No. 144-2, PageID 1757; *id* at PageID 1760.) This Court has recognized that the State of Ohio has a valid interest in maintaining that confidentiality. *Dodson v. Mohr*, No. 2:18-CV-00908, 2020 WL 5993649, at *5 (S.D. Ohio Oct. 9, 2020) (Ovington, M.J.). Although the requested materials may have some relevance to this case, ordering their production would unduly infringe upon the State of Ohio's legitimate concerns, including "institutional security, informant and prosecutor safety, and preventing additional harm to victims." *Id*. Therefore, the Court will deny Plaintiff's Third Motion to Compel with respect to Request 1-D and Request 3-5.

Plaintiff's Third Motion to Compel also seeks contempt sanctions against non-party ODRC "for failing to obey a subpoena duces tecum ordered by the [C]ourt on March 30, 2023." (Doc. No. 141, PageID 1586.) Plaintiff filed the subpoena on January 17, 2023, along with a motion requesting service on ODRC. (Doc. No. 90.) After *sua sponte* amending the subpoena to allow for timely compliance, the Court granted Plaintiff's motion on March 30, 2023 and ordered the United States Marshals Service to serve the modified subpoena on ODRC. (Doc. No. 110, PageID 1172.)

The record reflects that the subpoena was never served on ODRC. However, on April 28, 2023, Defendants notified the Court that although service was unsuccessful,

11

ODRC nevertheless provided the subpoenaed documents to Defendants' counsel, who in turn provided them to Plaintiff. (Doc. No, 114, PageID 1221-22.) In their response to Plaintiff's Third Motion to Compel, Defendants reiterate this chain of events (Doc. No. 144, PageID 1725; Doc. No. 144-7) and argue that "Fed. R. Civ. P. 45(g) does not provide for sanctions or contempt for not responding to an unserved subpoena[,] and in any event, [Plaintiff's] request has been fulfilled" (Doc. No. 144, PageID 1725).

Defendants are correct. By its own terms, Rule 45(g) authorizes a court to "hold in contempt a person who, ***after being served***, fails without adequate excuse to obey [a] subpoena." Fed. R. Civ. P. 45(g) (emphasis added). The Court cannot hold ODRC in contempt for failing to obey a subpoena that was not served. *Gwacs Armory, LLC v. Ke Arms, LLC*, No. 20-CV-00341, 2022 WL 2257043, at *4 (N.D. Okla. June 23, 2022) ("Oppenheimer was not served with the amended subpoena. As such, the Court cannot impose sanctions for his failure to comply with it."). Nor would the Court do so under these facts, since ODRC voluntarily chose to provide the requested documents.

Accordingly, the Court **DENIES** Plaintiff's Third Motion to Compel (Doc. No. 141.) Defendants need not respond to Plaintiff's Request 1-D or Request 3-5, and no sanctions will be imposed upon non-party ODRC.

### III. PLAINTIFF'S AMENDED MOTION FOR SUBPOENA DUCES TECUM (DOC. NO. 142) AND MOTION FOR SERVICE (DOC. NO. 143)

On September 25, 2023, Plaintiff filed an Amended Motion for Subpoena Duces Tecum (Doc. No. 142) and a Motion Requesting the Court to Order the U.S. Marshals to Serve the Subpoena Duces Tecum to Shirley Smith and the ODRC ("Motion for

Service," Doc. No. 143). These motions are functionally identical: they ask the Court to order the United States Marshals Service to serve a subpoena, which Plaintiff has furnished, on non-party Shirley Smith. (Doc. No. 142, PageID 1659; Doc. No. 143, PageID 1682.) Although the Court previously granted a similar motion (Doc. No. 75), Plaintiff indicates that the earlier subpoena was improperly completed and, as he correctly notes (Doc. No. 143, PageID 1682), it was never served.

As a party proceeding *in forma pauperis*, Plaintiff is entitled to service of subpoenas, at the expense of the United States, by an officer of the Court. 28 U.S.C. § 1915(d). Accordingly, Plaintiff's Amended Motion for Subpoena Duces Tecum (Doc. No. 142) and Motion for Service (Doc. No. 143) are **GRANTED**. The Clerk of Court is **DIRECTED** to promptly provide the United States Marshals Service with copies of the instant Order and Plaintiff's proposed subpoena and attachments (Doc. No. 142-1). The United States Marshals Service is **DIRECTED** to promptly serve those documents pursuant to the Federal Rules of Civil Procedure.

**IV. PLAINTIFF'S MOTION FOR EXTENSION OF TIME (DOC. NO. 139); FOURTH MOTION TO COMPEL (DOC. NO. 146); AND AMENDED MOTION IN REPLY (DOC. NO. 159)**

On June 29, 2023, the Court ordered the United States Marshals Service to serve Plaintiff's subpoena duces tecum on non-party Jeremy Pelzer, who is a journalist. (Notation Order of June 29, 2023.) Plaintiff's subpoena required Pelzer to produce certain documents related to an interview Pelzer conducted with non-party Shirley Smith. (Doc. No. 131-1, PageID 1374; *id*. at PageID 1377.) The subpoena, which specified compliance

13

by 2:00 pm on August 25, 2023, was served on Pelzer on August 10, 2023. (Doc. No. 135.)

On August 24, 2023, Pelzer timely served written objections on Plaintiff pursuant to Fed. R. Civ. P. 45(d)(2)(B). Plaintiff then filed a Motion for Extension of Time to Reply to the Non[-]Party Jeremy Pelzer's Objections to the Subpoena Duces Tecum ("Motion for Extension of Time," Doc. No. 139). However, the Federal Rules of Civil Procedure do not allow parties to file replies to objections to subpoenas. Instead, a party who wishes to enforce a subpoena over objections must seek a court order compelling compliance. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). Plaintiff has done so by filing a Fourth Motion to Compel (Doc. No. 146). Accordingly, the Court **DENIES AS MOOT** Plaintiff's Motion for Extension of Time (Doc. No. 139).

Pelzer timely filed a response in opposition to Plaintiff's Fourth Motion to Compel. (Doc. No. 149.) After being granted an extension, Plaintiff timely filed his reply memorandum on December 8, 2023. (Doc. No. 157). Subsequently, on January 2, 2024, Plaintiff filed a document captioned "Plaintiff's Amended Motion in Reply/Response to Non[-]Party Jeremy Pelzer's Memorandum In Opposition to Plaintiff's Fourth Motion to Compel" ("Amended Motion in Reply," Doc. No. 159). In his Amended Motion in Reply, Plaintiff requests leave to file instanter an amended version of the reply memorandum filed in support of his Motion to Compel. (Doc. No. 159, PageID 2038.) Plaintiff states that he was unaware that the Court had granted his request for an extension to submit his reply brief, and inadvertently left an argument out of the brief that

14

was filed. For good cause shown, the Court **GRANTS** Plaintiff's Amended Motion in Reply (Doc. No. 159).

Plaintiff's Fourth Motion to Compel reproduces and responds to Pelzer's multiple objections to Plaintiff's subpoena, which have not otherwise been filed with the Court. (Doc. No. 139, PageID 1842-55.) Plaintiff asserts that each objection is meritless and requests that the Court order Pelzer to comply with the subpoena. (*Id.*) In response, Pelzer raises three arguments: (1) "[t]he [s]ubpoena improperly seeks documents received by Mr. Pelzer from sources with firsthand knowledge that can be obtained through other, more convenient sources;" (2) "[t]he [s]ubpoena imposes an undue burden on Mr. Pelzer's First Amendment interests that is disproportional to the needs of this case;" and (3) the subpoena calls for documents protected by attorney-client privilege. (Doc. No. 149.) Finding it dispositive, the Court considers only the first of these arguments.

Pelzer argues that the Court should deny Plaintiff's Fourth Motion to Compel because the documents requested in Plaintiff's subpoena contain information known firsthand by non-parties Shirley Smith and JoEllen Smith and merely recorded by Pelzer. (Doc. No. 149, PageID 1895-96.) Pelzer contends that Plaintiff's subpoena improperly burdens him with producing information that is only "derivative[ly]" in his possession. (*Id.*) Pelzer supports his argument by citing two cases in which this Court declined to enforce subpoenas duces tecum. (*Id.* at PageID 1896 (citing *Tolliver v. Abuelo's Int'l*, No. 2:20-CV-03790, 2021 WL 3188420, at *2-4 (S.D. Ohio July 28, 2021) (Preston Deavers, M.J.); *Pannek v. U.S. Bank Nat'l Ass'n*, No. 1:19-CV-00852, 2021 WL 5533749, at *9 (S.D. Ohio July 21, 2021) (Litkovitz, M.J.)).)

15

Pelzer's reliance on *Tolliver* and *Pannek* is misplaced. In *Tolliver*, the challenged subpoena commanded the production of discovery that was available *from another party*. *Tolliver*, 2021 WL 3188420, at *2 ("Lubbock File Room contends, in part, that, as a non-party, it should not be subjected to the burden of producing documents that are otherwise obtainable *from Defendants*." (emphasis added)). Here, Shirley Smith and JoEllen Smith are not parties to the litigation. And in *Pannek*, the Court quashed a subpoena requiring the deposition of a party's investigator not because her knowledge was secondhand, but because it was gathered in anticipation of litigation and was therefore work product. *Pannek*, 2021 WL 5533749, at *9 ("Ms. Fooks's only knowledge of the underlying facts relevant to this case were discovered [sic] in her role as an investigator in anticipation of this litigation." (emphasis added)). Here, the information that Plaintiff seeks was not prepared in anticipation of this litigation. *Tolliver* and *Pannek* are therefore inapposite.

Nevertheless, Pelzer correctly argues that Plaintiff is obligated to seek discovery from the least burdensome source. Rule 26(b)(2)(C) provides that "the court must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Pelzer convincingly argues that it would be more convenient and less burdensome for Shirley Smith and JoEllen Smith to provide information about their own firsthand knowledge than for Pelzer to produce his secondhand, journalistic records of that same knowledge. *See, e.g.*, *Marquinez v. Dole Food Co.*, No. 1:20-MC-00042, 2021 WL 122997, at *8-9 (S.D. Ohio Jan. 13, 2021) (Bowman, M.J.) (noting the "special status" of non-party members of the press and

16

recognizing that this status is an appropriate factor in determining the burden imposed by a discovery request). The Court finds this argument persuasive.

Plaintiff argues that Pelzer is the least burdensome source from whom to obtain the requested discovery because only Pelzer possesses the exact documents (e.g., notes that Pelzer took during his interview of Shirley Smith) sought. (Doc. No. 146, PageID 1846.) But Plaintiff's interest is in the information contained in those documents, not the documents themselves. Shirley Smith and JoEllen Smith are the most convenient and least burdensome sources from whom to obtain the requested information. Accordingly, because the Court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive," Fed. R. Civ. P. 26(b)(2)(c)(i), the Court **DENIES** Plaintiff's Fourth Motion to Compel (Doc. No. 146).

## V. PLAINTIFF'S MOTION TO WITHDRAW REQUESTS (DOC. NO. 151)

On November 13, 2023, Plaintiff filed a document captioned "Motion to Withdraw Certain Requests (Revised)." ("Motion to Withdraw Requests," Doc. No. 151.) In this Motion, Plaintiff "request[s] permission to withdraw" certain discovery requests that he served upon Defendants. (*Id*.) However, as the Court has explained, Plaintiff may freely withdraw discovery requests without leave of court. (Doc. No. 110, PageID 11545 (citing to *McNamee v. Nationstar Mortgage, LLC*, No. 2:14-CV-01948, 2021 WL 5339533 (S.D. Ohio May 17, 2021) (Vascura, M.J.)).) Accordingly, Plaintiff's Motion to Withdraw Requests (Doc. No. 151) is **DENIED AS MOOT**.

## VI. CONCLUSION

In sum, for the reasons stated, the Court **ORDERS** as follows:

1. Plaintiff's First Motion to Compel (Doc. No. 58) is **DENIED**.

2. Plaintiff's Second Motion to Compel (Doc. No. 83) is **DENIED**.

3. Plaintiff's Motion for Extension of Time (Doc. No. 139) is **DENIED AS MOOT**.

4. Plaintiff's Third Motion to Compel (Doc. No. 141) is **DENIED**.

5. Plaintiff's Motion for Subpoena Duces Tecum (Doc. No. 142) and Motion for Service (Doc. No. 143) are **GRANTED**.

    a. The Clerk of Court is **DIRECTED** to promptly provide the United States Marshals Service with copies of the instant Order and Plaintiff's proposed subpoena and attachments (Doc. No. 142-1).

    b. The United States Marshals Service is **DIRECTED** to promptly serve these documents pursuant to the Federal Rules of Civil Procedure.

6. Plaintiff's Fourth Motion to Compel (Doc. No. 146) is **DENIED**.

7. Plaintiff's Motion to Withdraw Requests (Doc. No. 151) is **DENIED AS MOOT**.

8. Plaintiff's First Motion Requesting Order Compelling Production (Doc. No. 155) is **DENIED**.

9. Plaintiff's Second Motion Requesting Order Compelling Production (Doc. No. 156) is **DENIED**.

10. Plaintiff's Amended Motion in Reply (Doc. No. 159) is **GRANTED**.

**IT IS SO ORDERED**.

*s/Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

Procedure on Objections

Pursuant to Fed. R. Civ. P. 72(a), any party may serve and file specific, written objections to the findings within **FOURTEEN** days after being served with this Order. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Order objected to and shall be accompanied by a memorandum of law in support of the objections. If the Order is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. See *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).