# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| LANCE POUGH,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MIKE DEWINE, et al.,<br><br>　　　　　　Defendants. | Case No. 2:21-cv-00880-MHW-CHG<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Caroline H. Gentry |

### MEMORANDUM OF NON-PARTY JEREMY PELZER IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE CAROLINE H. GENTRY'S FEBRUARY 4, 2024 DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 72(a), plaintiff Lance Pough filed an Objection (ECF No. 172) to Magistrate Judge Caroline H. Gentry's February 4, 2024 Decision and Order (ECF No. 164) (the "Order"), including to the portion of that Order denying his motion to compel non-party reporter Jeremy Pelzer to produce documents relating to a January 2019 article written by Mr. Pelzer entitled "Ohio Parole Board is secretive and 'frighteningly unfair,' former member Shirley Smith says" (the "Article"), copies of which are attached as Exhibits A and A-1 to Mr. Pough's Complaint (2d Am. Compl., ECF No. 20-1, Exs. A, A-1) pursuant to a subpoena served on Mr. Pelzer on August 10, 2023 (the "Subpoena"), a copy of which is appended to Mr. Pough's underlying motion to compel (ECF No. 146).

But Mr. Pough does not and cannot identify any aspect of Magistrate Judge Gentry's Order that is "clearly erroneous or is contrary to law" as Rule 72(a) requires. His only argument is that Magistrate Judge Gentry failed to apply the standard set forth in *In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987)—a case about the scope of a journalist's First Amendment protections against a criminal grand jury subpoena that has no application here. (Obj., ECF No.

172, at 2-5.) But Magistrate Judge Gentry explicitly declined to consider or rely on Mr. Pelzer's First Amendment arguments, "[f]inding [his Rule 26 arguments] dispositive." (Order, ECF No. 164, at 15.)

Because Mr. Pough fails to point to any error in that ruling, the Court should overrule his objections and affirm the Order denying his motion to compel against Mr. Pelzer.

## LEGAL STANDARD

To "modify or set aside" a Magistrate Judge's non-dispositive order, Mr. Pough must establish that the order "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Here, the relevant portion of the Order consists of a denial of a motion to compel production of documents pursuant to a third-party subpoena. (*See* Order, ECF No. 164, at 13-17.)

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (quotations omitted). And under Rule 26, discovery must seek information that is both "relevant . . . and proportional to the needs of the case," considering, among other things, "the parties' relative access to relevant information," "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If the discovery sought falls outside those parameters, or is otherwise "can be obtained from some other source that is more convenient, less burdensome, or less expensive," that discovery is not permitted. Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 45(d)(1), 45(d)(3)(A)(iv) (Court "must quash or modify" any subpoena that "subjects a person to undue burden" and the issuing party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena"); *Hendricks*, 275 F.R.D. at 253 (collecting cases

quashing subpoenas that exceed the scope of Rule 26). In other words, as Magistrate Gentry correctly ruled, parties are "obligated to seek discovery from the least burdensome source," which Mr. Pough failed to do here. (Order, ECF No. 164, at 16.)

## ARGUMENT

**I.     Magistrate Judge Gentry's Order is not clearly erroneous or contrary to law.**

**A.     Magistrate Judge Gentry applied the correct legal standard.**

Mr. Pough's one and only objection to the Order as it pertains to Mr. Pelzer is that Magistrate Judge Gentry "failed to employ the correct standard of the US [sic] Sixth Circuit Court of Appeals, *In re Grand Jury Proc., 810 F.2d 580, 586(1987)* [sic]" in denying Mr. Pough's motion to compel Mr. Pelzer to comply with his subpoena *duces tecum*. (Objection, ECF No. 172, at 2.)

But *In re Grand Jury* is not about civil discovery—it addresses whether a journalist has a First Amendment privilege to resist a grand jury subpoena in a criminal case. 810 F.2d at 583-86. And Magistrate Judge Gentry did not decide Mr. Pough's motion on First Amendment grounds. Instead, she ruled that Mr. Pough's subpoena exceeded the proper scope of discovery under Federal Rule of Civil Procedure 26—specifically, because Mr. Pough failed "to seek discovery from the least burdensome source," which Rule 26 requires. (Order, ECF No. 164, at 16-17.) "Finding [those Rule 26 arguments] dispositive," Magistrate Judge Gentry specifically declined to consider Mr. Pelzer's further argument that the subpoena imposed an undue burden on his First Amendment rights. (Order, ECF No. 164, at 15.) Thus, Magistrate Judge Gentry correctly disregarded *In re Grand Jury* in ruling on the scope of civil discovery under Federal Rule of Civil Procedure 26.

3

### B. Magistrate Judge Gentry correctly denied the motion to compel.

Not only did Magistrate Judge Gentry apply the correct legal standard, she also reached the correct result. Mr. Pough is suing members of the parole board for discriminating against him on the basis of his race when denying his application for parole. (*See generally*, 2d Am. Compl., ECF No. 20.) But Mr. Pelzer has nothing to add to that claim.

Mr. Pelzer is a journalist. (Pelzer Decl., ECF No. 132-1, ¶ 1.) He is not a member of the parole board. (*Id.*) He does not work for the Ohio Department of Rehabilitation and Corrections (ODRC). (*Id.*) He has no information—firsthand or otherwise—about Mr. Pough, his criminal convictions, or his parole proceedings. (*Id.* ¶¶ 5, 7.)

Mr. Pelzer merely wrote an Article cataloging *general* criticisms from former parole board member Shirley Smith and brief response from parole board spokeswoman JoEllen Smith (a former defendant in this case). (*See* 2d Am. Compl., ECF No. 20-1, Exs. A, A-1.) Nothing in Mr. Pelzer's Article (or in the limited documents in his possession) has anything to do with Mr. Pough's case, and Mr. Pelzer has no firsthand knowledge to support or refute the allegations made by Shirley Smith in the Article. (Pelzer Decl., ECF No. 132-1, ¶ 5.)

Moreover, the only documents in Mr. Pelzer's possession reflect general information about the parole board *obtained from other necessary witnesses in this matter*—namely, from Shirley Smith and JoEllen Smith. As Magistrate Judge Gentry concluded, even if Mr. Pelzer has some "unique" documents in his possession, such as his personal notes of interviews, "Plaintiff's interest is in the information contained in those documents, not the documents themselves," and "Shirley Smith and JoEllen Smith are the most convenient and least burdensome sources from whom to obtain [that] information." (Order, ECF No. 164, at 17.)

Shirley Smith is not only the primary source of the quotes in the Article (which largely form the basis for Mr. Pough's claims), she is a former parole board member herself with

4

firsthand knowledge of its operations, and as Mr. Pough alleges in his Complaint, she was also *present at Mr. Pough's own parole hearing*. (2d Am. Compl., ECF No. 20, ¶ 22(A).) To the extent she had written communications or shared documents with Mr. Pelzer, she can produce them in this case. Similarly, JoEllen Smith is a former ODRC employee with firsthand information about her statements in the Article, and access to any written communications she had with Mr. Pelzer. And the ODRC—which operates the parole board and employed each of the defendants—is unquestionably subject to document discovery concerning communications and information shared with Mr. Pelzer by its employees (including JoEllen Smith), even if the ODRC itself is immune from liability in this case.

Mr. Pough can and has sought discovery from those witnesses (*see, e.g.,* Order, ECF No. 110), and there is no reason to impose discovery obligations on another third party whose information is entirely derivative of information in the possession of witnesses with firsthand knowledge related to Mr. Pough's claims.

Thus, to the extent Mr. Pough's subpoena seeks communications between Mr. Pelzer and Shirley Smith, JoEllen Smith, or anyone else at the ODRC, or information provided to Mr. Pelzer by those sources, those documents can be obtained from those other necessary witnesses that Mr. Pough has already subpoenaed in this matter, without imposing discovery burdens on an additional third party whose only involvement here was as a journalist, gathering general information after the fact from parties with firsthand knowledge, none of which had anything to do with Mr. Pough or his particular interactions with the parole board. For that reason, Magistrate Judge Gentry correctly denied Mr. Pough's motion to compel against Mr. Pelzer. (Order, ECF No. 164, at 17.)

**II.     The Court can sustain the Order on another ground: the Subpoena imposes an undue burden on Mr. Pelzer's First Amendment interests that is disproportional to the needs of this case.**

The Court should overrule Mr. Pough's objections and sustain Magistrate Judge Gentry's Order for a second, independent reason: requiring Mr. Pelzer to produce his journalistic work product imposes an undue burden on Mr. Pelzer's First Amendment rights as a non-party journalist.[1]

Mr. Pough's insistence on applying *In re Grand Jury Proc.*, 810 F.2d 580, 586 (6th Cir. 1987) is misplaced. (Objection, ECF No. 172, at 2-5; Fourth Mot. to Compel, ECF No. 146, at 7.) Following the Sixth Circuit's decision in *In re Grand Jury*, courts have subsequently declined to apply it outside the context of criminal grand juries. *See Southwell v. S. Poverty L. Ctr.*, 949 F. Supp. 1303, 1312 (W.D. Mich. 1996) (interpreting *In re Grand Jury* as limited to criminal grand juries and adopting view of "most courts" that the First Amendment affords journalists a qualified privilege in civil cases).

Regardless of whether *Southwell* correctly interprets *In re Grant Jury*, however, the Sixth Circuit has made clear that courts deciding the validity of subpoenas to the press must "'make sure that the proper balance is struck between freedom of the press and the obligation of all citizens to give relevant testimony.'" *Marquinez v. Dole Food Co. Inc.*, No. 1:20-MC-042, 2021 WL 122997, at *9 (S.D. Ohio Jan. 13, 2021) (quoting *In re Grand Jury*, 810 F.2d at 586 (6th Cir. 1987)); *see also National Labor Relations Board v. Midland Daily News*, 151 F.3d 472, 475 (6th Cir. 1998) (holding that the First Amendment protected a newspaper publisher from being forced

---

[1] In his motion to compel, Mr. Pough focused his burden argument on the costs associated with transmitting responsive documents, and indicates his efforts to reduce that burden by accepting email delivery of such documents and paying for any necessary postage. (*See* Fourth Mot. to Compel, ECF No. 146, at 3, 15.) But as outlined below, it is the burden on Mr. Pelzer's First Amendment rights, and not the cost of transmitting responsive documents, that require the Court to affirm Magistrate Judge Gentry's denial of the motion to compel.

by subpoena to divulge the identity of advertiser). That is in addition to the protections already afforded Mr. Pelzer as a third party to this litigation under Rule 26. *See Atlas Indus. Contractors LLC v. In2Gro Techs. LLC*, No. 2:19-CV-2705, 2020 WL 1815718, at *3 (S.D. Ohio Apr. 10, 2020) ("'[T]he status of a person as a non-party is a factor that weighs against' compelling compliance with a subpoena.") (quoting *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013)).

The First Amendment guarantee of a free press indisputably includes protection for "[n]ews gathering" activities, such as conducting interviews with current and former public officials. *See CBS, Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) ("News gathering . . . qualifies for First Amendment protections"); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576, 599 (Stewart, J., concurring) ("The right to publish implies a freedom to gather information").

Accordingly, "[g]iven the important role that newsgathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." *Marquinez*, 2021 WL 122997, at *9 (quoting *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 406 (E.D. Mich. 2003)). As the *Marquinez* court explained:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation . . . And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Id.* (quoting *In re DaimlerChrysler*, 216 F.R.D. at 406); *see also Gonzales v. Nat'l Broadcasting Co., Inc.*, 194 F.3d 29, 35 (2nd Cir. 1999) (same).

Those fundamental First Amendment interests plainly outweigh any limited value in compelling Mr. Pelzer—a journalist with no firsthand knowledge of any fact relevant to the case—to comply with the Subpoena. Indeed, aside from written communications with other necessary witnesses already being subpoenaed in this action, the only documents in Mr. Pelzer's possession are journalistic work product—for example, drafts of the Article and snippets of unpublished interviews with sources[2]—none of which pertain to Mr. Pough's parole decisions and which otherwise have no relevance to the claims at issue in this case.

Again, Mr. Pough can and has subpoenaed parties with actual knowledge relating to his claims. (*See* Order, ECF No. 110.) The additional discovery burdens on Mr. Pelzer are far outweighed by the threat to his First Amendment interests in protecting his journalistic process and work product from intrusion by private litigants seeking to use the press as a litigation tool. *See Marquinez*, 2021 WL 122997, at *9.

For this additional reason, the Court should affirm the Order denying Mr. Pough's motion to compel Mr. Pelzer to respond to a document subpoena.

### III. At minimum, the Court should exclude documents protected by the attorney-client privilege.

To the extent the Court requires Mr. Pelzer to produce any responsive documents, the Court should exclude from production any documents protected by the attorney-client privilege.

---

[2] Although Mr. Pough represented in his motion to compel that he spoke with Mr. Pelzer in 2021 and that Mr. Pelzer indicated he had certain interview recordings, Mr. Pough's assumption that Mr. Pelzer has complete recordings and/or transcripts of every interview he conducted for purposes of the Article is mistaken. The only recordings in Mr. Pelzer's possession are partial and have nothing to do with Mr. Pough or his parole decision, and therefore have no relevance to the case.

On its face, Rule 26 specifically limits discovery to "any *nonprivileged* matter." Fed. R. Civ. P. 26(b)(1) (emphasis added). The Subpoena, however, contains no such limitation.

Mr. Pough's prior briefing has assumed that Mr. Pelzer's privilege objections relate to communications with the sources quoted in the Article, and claims any such privilege has been waived by publishing quotes from those sources. (Fourth Mot. to Compel, ECF No. 146, at 11-12.) That is not, however, the basis for Mr. Pelzer's privilege claim.

Rather, the Subpoena purports to require Mr. Pelzer to produce all documents relating to the Article and its subject-matter, which would necessarily include communications with counsel concerning the Subpoena itself, which by definition pertain to the Article and its source material. Those communications are both irrelevant and protected by the attorney-client privilege. At a minimum, such privileged communications should be excluded from any order requiring production.

## CONCLUSION

For all of the foregoing reasons, the Court should overrule Mr. Pough's objections and affirm Magistrate Judge Gentry's Order as it pertains to Mr. Pelzer.

Dated: March 15, 2024

Respectfully submitted,

By: /s/Daniel M. Kavouras
Daniel M. Kavouras (Ohio Bar No. 0089773)
Taylor M. Thompson (Ohio Bar No. 0098113)
Baker & Hostetler LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
T: 216-861-7099

9

          F: 216-621-0740
          dkavouras@bakerlaw.com
          tathompson@bakerlaw.com

*Attorneys for Non-Party Jeremy Pelzer*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a copy of the foregoing was filed electronically on March 15, 2024. Service and notice of the pleading has been distributed to the attorneys of record via the CM/ECF system. Service of the pleading has also been made upon Plaintiff, Lance Pough, via regular mail, on March 15, 2024, at the following address:

> Lance Pough
> A653422
> MANSFIELD CORRECTIONAL INSTITUTION
> P.O. Box 788
> 1150 NORTH MAIN STREET
> MANSFIELD, OH 44901

*/s/Daniel M. Kavouras*
Attorney for Non-Party Jeremy Pelzer